**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

JAN 28 2015

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS



JOSE LUNA,

               Petitioner - Appellant,

   v.

A. J. MALFI, Warden,

               Respondent - Appellee.

No. 10-55711

D.C. No. 2:07-cv-00148-DMG-AGR

MEMORANDUM[*]

Appeal from the United States District Court
for the Central District of California
Dolly M. Gee, District Judge, Presiding

Argued and Submitted July 7, 2014
Pasadena, California

Before: NOONAN and BERZON, Circuit Judges, and SABRAW, District Judge.[**]

California state prisoner Jose Luna appeals from the district court's

judgment denying his 28 U.S.C. § 2254 petition.  We review de novo a district

---

    [*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

    [**]    The Honorable Dana M. Sabraw, District Judge for the U.S. District Court for the Southern District of California, sitting by designation.

court's decision to deny a § 2254 petition, *see Emery v. Clark*, 643 F.3d 1210, 1213 (9th Cir. 2011), and we affirm.

**1.** Luna asserts he was deprived of due process when the attorney prosecuting his case took the stand during his trial and gave testimony that supported the credibility of a witness who, having previously identified Luna as one of two shooters who killed one man and injured another, later recanted and refused to identify Luna in court. We hold that, even assuming, for the sake of argument, a violation of clearly established law, *see Parker v. Matthews*, 132 S. Ct. 2148 (2012) (per curiam), Luna has not shown the prosecutor's testimony "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (internal quotation marks omitted).

First, Detective Lowe, who conducted Alarcon's pretrial interviews, testified as to Alarcon's prior identifications of Luna and Picado as the shooters. Lowe testified that Alarcon was "positive" when he first identified Luna from a photograph array and selected Alarcon's photograph "almost immediately." The photograph of Luna as identified by Alarcon was shown to the jury, and Lowe testified that the writing beneath the photograph, which stated, "I'm positive seeing him shooting some kind of semi-automatic gun at the Black guys," was Alarcon's

2

writing. Lowe also testified that Alarcon's signature was beneath Luna's photograph and that Alarcon had drawn the circle around Luna's photograph. In addition, Lowe testified that Alarcon had complained to the government that his family was threatened and said that he was afraid to testify against Luna and Picado.

Second, Alarcon testified and, although he recanted his earlier identifications, admitted that the signature beneath Luna's photograph was his signature. We agree with the California Court of Appeal that Alarcon's "complete denial at trial was inherently unbelievable" in the face of Lowe's testimony and Alarcon's acknowledged signature beneath Luna's photograph.

Finally, when prosecutor Enomoto took the stand, he did not testify as to Alarcon's critical original identification of Luna, as he was not present during that interview. Rather, Enomoto testified only as to the later interview, during which Alarcon confirmed his earlier identifications. And, as to this subsequent interview, which only corroborated Alarcon's earlier, documented identification, Enomoto simply repeated Alarcon's own statements at the second interview, testifying that Alarcon "said he was positive about the previous identifications he made from the photographs;" that when asked if he was "sure" about those identifications,

3

Alarcon had said "yes"; and that Alarcon did not express any hesitation about his earlier identifications and was instead "unequivocal about his previous ID's."

Under the circumstances, we conclude that Enomoto's testimony likely had little, if any, impact on the jury's assessment of Alarcon's earlier out-of-court identification, and thus did not have a "substantial and injurious effect or influence" on the verdict. *Brecht*, 507 U.S. at 637 (internal quotation marks omitted).

**2.** Luna also contends that he received ineffective assistance of counsel because his lawyer failed to object to the prosecutor's testimony before it began. We reject this claim, as well.

Enomoto was called to the stand principally to testify that, at the interview which Enomoto attended, Alarcon said that someone known as "Wicked" was one of the individuals with a gun; "Wicked" was the nickname of a different individual, not Luna or his co-defendant. In his testimony, Lowe had denied that Alarcon said "Wicked" had a gun, and counsel for both defendants clearly agreed with the prosecution that Lowe's incorrect testimony needed to be corrected. Because Enomoto's central testimony contradicted Lowe's testimony, it had the potential to undermine Lowe as a witness generally, and thus to benefit Luna. Indeed, Luna's counsel actively sought Enomoto's testimony, indicating at one point that he

4

himself would call Enomoto to the stand and refusing to enter into a stipulation that Alarcon said that "Wicked" had the gun, which would have rendered Enomoto's testimony unnecessary.

The particular part of Enomoto's testimony to which Luna now objects – the repetition of Alarcon's confirmation of his prior identification of Luna – was simply a recounting of the rest of the same interview at which Alarcon had mentioned "Wicked," and so fairly included to provide the jury with a complete picture of that interview. The California Court of Appeal's ruling that defense counsel likely had a tactical reason for not objecting before Enomoto took the stand, and that counsel's performance therefore was not deficient, was thus a reasonable application of clearly established Supreme Court law. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011).

**AFFIRMED.**

Judge NOONAN concurs in the judgment.

*Luna v. Malfi*, No. 10-55711

SABRAW, District Judge, concurring:

I concur in the memorandum disposition. I write separately to highlight two matters that further explain the prosecutor's testimony and why Luna is not entitled to habeas relief.

First, the prosecutor's testimony was neither planned nor volunteered; rather, it arose in response to Detective Lowe's unexpected disavowal of Alarcon's statement that someone other than Luna and Picado, *i.e.,* "Wicked," was seen with a gun around the time of the shooting. Seizing on the opportunity, Luna's counsel made clear he would not stipulate that Alarcon mentioned "Wicked" had a gun: "I won't stipulate those things were said. I'm going to call Mr. Enomoto to the stand." That was a principled tactical decision, as testimony by Enomoto about "Wicked" would accentuate the potentially exculpatory evidence that "Wicked" was the other gunman, not Luna, and it would discredit Lowe's testimony on that point. The prosecutor's testimony was therefore not only invited, but essentially forced by Luna's lawyer. *See Darden v. Wainright*, 477 U.S. 168, 182 (1986) ("the idea of 'invited response' is used not to excuse improper comments, but to determine their effect on the trial as a whole").

Second, Alarcon's pretrial identifications were objectively credible and

1

consistent with all of the evidence. To start, Alarcon's pretrial identification of Luna as the one who shot the "semi-automatic at the Black guys" was corroborated by the trial testimony of the surviving victim, who identified Luna as one of the shooters. The surviving victim also testified that Picado shot him with a revolver. That testimony was consistent with Alarcon's pretrial statement that Picado used a revolver during the shootings, including when he shot and killed one of the victims.

Alarcon's pretrial identifications also were inherently unequivocal, as he actually knew Luna and Picado – they are "cousins or [related] by marriage" to Alarcon's wife, knew the members of the gang from prior contacts, saw the shootings, and memorialized his identifications by documenting and signing the photographs of Luna and Picado. Detective Lowe testified to these facts after Alarcon recanted at trial. A gang expert further explained that witnesses in gang cases commonly recant due to threats. Thus, as the California Court of Appeal stated, Alarcon's denial at trial of his earlier identification of Luna was "inherently unbelievable" under the circumstances.

Luna was at the party when the brawl broke out between his gang and the "Black guys." That was undisputed. The evidence also established that Luna possessed the .380 caliber semi-automatic handgun that fired the rounds at the

2

crowd. *That gun was found at his feet*, seven weeks after the shooting, and the prosecutor highlighted this fact during his rebuttal closing argument. The gun had four live rounds in it when recovered from Luna. The other two rounds – the gun having a six round capacity – were found expended at the crime scene as evidenced by discarded shell casings. Alarcon's pretrial statement that Luna had the semi-automatic handgun that was fired at, but missed, "the Black guys," was consistent with the ballistics evidence, which established that the shell casings recovered from the scene were fired from that gun and the bullets recovered from the victims did not come from that gun.

The jury made true findings consistent with that evidence, that Luna "personally and intentionally discharged a firearm" but did not hit anyone. The jury also credited the evidence that Picado shot at and hit his targets, finding Picado "personally and intentionally discharged a firearm *and caused bodily harm or death*."

To establish Luna's guilt the prosecution did not have to prove that Luna fired the fatal shots or even that he fired the shots that injured the other victim. Under the natural and probable consequences theory advanced by the State, the prosecutor only needed to establish that Luna committed one of the "target offenses," and that murder or attempted murder was the natural and probable

3

consequence of that offense. Under the natural and probable consequences theory, "an aider and abetter is guilty not only of the offense he or she intended to facilitate or encourage [*i.e.,* the target offense], but also any reasonably foreseeable offense committed by the person he or she aids and abets." *People v. Gonzalez*, 52 Cal. 4th 254, 296 (2011) (citing *People v. Prettyman*, 14 Cal. 4th 248, 261 (1996)). The target offenses defined for the jury included assault with a firearm and negligent discharge of a firearm. Firing a gun at a group of people satisfies the target offenses of assault with a firearm and negligent discharge of a firearm, the natural and probable consequences of which are murder and attempted murder. Finally, the prosecution's theory of liability was tied together by its gang expert, who testified that gang members usually are armed when they go out in a group and they defend each other. He testified that an argument of the kind that occurred in this case often escalates into a shooting where people are injured or killed. And that is exactly what happened.

The testimony of the gang expert, combined with the documentation of Alarcon's pretrial identification of Luna and corroboration by Detective Lowe, the identification of Luna at trial by the surviving victim, the identification of Picado by the surviving victim as the one who shot him with the revolver, the ballistics evidence, and the discovery of the .380 semi-automatic handgun used at the scene

4

at Luna's feet, was strong evidence of guilt.  All of the evidence was consistent with, and corroborated, Alarcon's pretrial identifications, which, standing alone, were solid given his prior knowledge of both shooters.  In light of the evidence, I have no doubt as to the harmlessness of the prosecutor's testimony in this case.  I agree with the California Court of Appeal that the effect of the prosecutor's testimony, when taken in context, was "negligible."  I therefore concur that, even assuming, without deciding, a violation of clearly established law, the prosecutor's conduct did not have a "substantial and injurious effect" on the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).